UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALICIA EDMONDSON | ) | CASE NO. 5:14CV603 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Alicia Edmondson Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in her October 18, 2012 decision in finding that Plaintiff was not disabled despite her impairments because she retained the ability to perform a limited range of sedentary work which was compatible with the functional requirements of all of her past relevant positions (Tr. 71-96). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.     PROCEDURAL HISTORY**

Plaintiff, Alicia Edmondson, filed her application for DIB and SSI on February 5, 2010, alleging she became disabled on October 1, 2009 (Tr. 181-185). Plaintiff's application was denied

initially and on reconsideration (Tr. 142, 149, 152). Plaintiff requested a hearing before an ALJ, and, on July 26, 2012, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ, and a vocational expert (VE) also testified.

On October 18, 2012, the ALJ issued her decision, finding Plaintiff not to be disabled (Tr. 71-96). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-4, 69). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Sections 405(g) and 1383(c)(3).

## II.    STATEMENT OF FACTS

Plaintiff was born on September 18, 1954, and was fifty-seven years old at the time of the hearing (Tr. 101). She has a high school education and past relevant work experience as a telephone solicitor (sedentary and semi-skilled) (Tr. 84, 104). She also has had past relevant work experience as a door-to-door salesperson (light and unskilled), insurance sales agent (light and skilled), and as a home health aide (medium per the DOT and light as performed, and semi-skilled) (Tr. 353).

## III.    SUMMARY OF MEDICAL EVIDENCE

In January 2010, Plaintiff presented to a doctor with complaints of right elbow pain, fingertip numbness, and periodic pain and tightness in her neck (Tr. 381). After an examination, the doctor stated that her finger numbness was likely carpal tunnel syndrome (CTS), and that she should get steroid injections (Tr. 382). The doctor also diagnosed suspected mild cervical spondylosis, and suggested an anti-inflammatory drug and a muscle relaxant (Tr. 382).

A February 2010 x-ray of Plaintiff's right elbow showed mild spurring at the ulna (Tr. 466). Later that month, Plaintiff presented to a doctor with complaints of worsening bilateral arm pain and numbness (Tr. 377). The doctor stated that her symptoms were inconsistent with CTS, despite positive examination tests, and that the suspected cause was cervical radiculopathy/spinal stenosis (Tr. 378). The doctor ordered an EMG study to assess her possible CTS, and referred Plaintiff to a neurologist (Tr. 378). The next month, a neurologist indicated that Plaintiff's EMG study was consistent with CTS, and recommended anti-inflammatory medication (Tr. 375).

In April 2010, Plaintiff presented to a nurse, requesting a referral for fibromyalgia (Tr. 451). She reported pain in her back, knees, scalp, arms, and legs (Tr. 451). Plaintiff said that her prior elbow pain was still present, but improved (Tr. 451). She was referred to a rheumatologist (Tr. 452). Plaintiff presented to the rheumatologist the next month with complaints of constant fatigue, generalized pain, and poor memory (Tr. 446). She also reported knee and lower back problems (Tr. 446). The doctor diagnosed fibromyalgia, and explained that it was benign, non-progressive, and not a serious condition (Tr. 448-449). Plaintiff returned to the rheumatologist two weeks later with complaints of unimproved knee pain, morning stiffness, and bilateral carpal tunnel pain and numbness (Tr. 440). Plaintiff was counseled in stress reduction, and advised to exercise (Tr. 444).

In June 2010, Plaintiff presented to a doctor to discuss her CTS and knee pain (Tr. 438). She asked about having Synvisc (a viscous agent) injected into her knees (Tr. 438). The doctor recommended a steroid injection for CTS, and referred her to a rheumatologist for the knee injections (Tr. 439). Plaintiff received the steroid injections to her hands the next month (Tr. 436). Plaintiff returned to a rheumatologist later that month with continuing complaints of widespread pain, particularly in her knees (Tr. 431). She requested that Synvisc be injected in her knees (Tr. 431). The doctor suggested steroid injections instead, and again recommended exercise (Tr. 434). Plaintiff's

3

knees were injected with steroids (Tr. 434).

In July 2011, Plaintiff presented to Dr. Tricia Bedrick with complaints of pain in her legs, arms, and back (Tr. 572). She had crepitus in her knees and in joints in her hands (Tr. 572). Dr. Bedrick diagnosed conditions, including CTS, fibromyalgia, and osteoarthritis, primarily in the lower leg (Tr. 573). She ordered a variety of laboratory tests (Tr. 573).

In September 2011, Plaintiff presented to Dr. Nilesh Shah with complaints of bilateral knee pain, worse on the right (Tr. 575). On examination, Plaintiff's knees were tender at the retropatellar area, and she had positive patella grinding (Tr. 576). However, she had essentially painless and full ranges of knee motion and a normal gait (Tr. 576). Dr. Shah noted that x-rays showed mild to severe degenerative joint disease in parts of her knees (Tr. 576). Dr. Shah recommended physical therapy and injections of Synvisc (Tr. 577).

In October 2011, Dr. Shah injected Plaintiff's right knee with Synvisc (Tr. 578-579). Approximately one week later, Plaintiff presented to Dr. Bedrick with complaints of upper back pain on the right (Tr. 580). Dr. Bedrick diagnosed muscle spasm, and prescribed medications, including a muscle relaxant and narcotic pain medication (Tr. 581). Approximately one week later, Plaintiff presented to Dr. Shah for treatment of lower and middle back pain (Tr. 612). An examination was normal, and Dr. Shah recommended a "watchful waiting approach" (Tr. 613). That month, Plaintiff began physical therapy for treatment of knee and lower back pain, but was discharged three months later because her progress had plateaued (Tr. 615, 627). In November 2011, Dr. Shah injected Synvisc into Plaintiff's left knee (Tr. 609-610). In December 2011, Plaintiff presented to Dr. Bedrick with complaints of pain in a finger on her right hand caused by a fall (Tr. 592). Dr. Bedrick ordered an x-ray, and recommended Ibuprofen and use of ice (Tr. 592).

In January 2012, Plaintiff began physical therapy to improve her ability to grasp with her right hand (Tr. 625). Two days later, Plaintiff presented to Dr. Shah, and reported that the injection helped somewhat, but that the steroid injection helped more (Tr. 605). Plaintiff was scheduled for a steroid injection, which was administered the next month (Tr. 599, 606).

In February 2012, Plaintiff returned to Dr. Shah for knee injections, and reported having no improvement (Tr. 599). Dr. Shah performed steroid injections (Tr. 600). That month, Plaintiff told Dr. Bedrick that her disability claim had been denied twice, and Dr. Bedrick ordered a functional capacity assessment (Tr. 634).

In April 2012, Carol Little, an occupational therapist, performed a functional evaluation of Plaintiff (Tr. 755-764). Ms. Little stated that Plaintiff had limited participation in testing, due to over-guarding, but that the results could reflect her true abilities (Tr. 761). She cautioned that the evaluation should not be used to project actual work capacity because Plaintiff may be able to function at a higher level than she was willing to do or that she perceived herself capable of doing (Tr. 761). Ms. Little said that Plaintiff should be able to perform sedentary work (Tr. 761). She opined that Plaintiff could not squat, stoop, or lift from the floor to the height of her knuckles (Tr. 762). Ms. Little stated that Plaintiff would have difficulty maintaining one position and performing repetitive tasks for prolonged periods of time (Tr. 762). She said that other limiting factors were: pain control; decreased right eye vision; and occasional hand and foot numbness (Tr. 762). In May 2012, Dr. Shah performed another injection of Synvisc in Plaintiff's right knee (Tr. 770-771).

In May 2010, Dr. Mila Bacalla reviewed Plaintiff's medical records and created an assessment of her physical limitations for the state DDS (Tr. 418-424). Dr. Bacalla opined that Plaintiff was limited to: occasionally lifting and carrying twenty pounds; frequently lifting and carrying ten pounds; standing and walking for six hours per day; and sitting for six hours per day (Tr. 419). Dr. Bacalla

5

indicated that Plaintiff was limited in handling, and should avoid concentrated exposure to vibrations (Tr. 421-422).

In May 2011, Dr. Esberdado Villaneuva reviewed Plaintiff's medical records and created an assessment of her physical limitations for the state DDS (Tr. 551-558). Dr. Villaneuva opined that Plaintiff was limited to: occasionally lifting and carrying twenty pounds; frequently lifting and carrying ten pounds; standing and walking for six hours per day; and sitting for six hours per day (Tr. 552). Dr. Villaneuva indicated that Plaintiff should never climb ladders, ropes, or scaffolds; must avoid moderate exposure to hazards; and was limited with respect to her depth perception, field of vision, and her ability to exercise gross manipulation (Tr. 553-555).

In February 2012, Dr. Shah completed an assessment of Plaintiff's physical abilities (Tr. 631-632). Dr. Shah opined that Plaintiff could occasionally lift and carry ten pounds; frequently lift and carry five pounds; stand and walk two hours per day and one hour at a time; sit for an unlimited period of time; occasionally balance; and rarely or never climb, stoop, crouch, kneel, and crawl (Tr. 631). Dr. Shah said that Plaintiff could occasionally push and pull, required the option to shift between sitting and standing at will, and should restrict her exposure to moving machinery and extreme temperatures (Tr. 632).

In May 2012, Dr. Bedrick completed an assessment of Plaintiffs' physical abilities (Tr. 753-754). She opined that Plaintiff was limited to: light lifting occasionally; frequently lifting twice a day; standing and walking a total of twenty-one to thirty minutes a day; sitting forty-five to sixty minutes a day; frequently balancing; rarely or never climbing, stooping, crouching, or crawling; occasionally pushing and pulling and exercising gross manipulation; and frequently reaching, handling, feeling, and performing fine manipulation (Tr. 754). Dr. Bedrick stated that Plaintiff should avoid heights and required the option to shift between sitting and standing at will (Tr. 754).

6

In October 2012, Dr. Bedrick wrote a second assessment of Plaintiff's physical abilities (Tr. 773-774). The opinion was substantially similar to her May 2012 opinion, except that Dr. Bedrick stated that Plaintiff could stand and walk uninterrupted for twenty to thirty minutes per day (Tr. 773).

Plaintiff presented a number of medical records to the Appeals Council after the ALJ's decision, which were identified by the Agency as Exhibits 24F and 25F (Tr. 775-807).

A September 2012 cervical spine x-ray revealed moderate to advanced degenerative changes of the middle and lower cervical spine and right-sided foraminal narrowing, most pronounced at C5-6 (Tr. 783-784). An October 2012 cervical spine MRI showed: a disc osteophyte complex at C4-5 with effacement on the cord; disc osteophyte complexes at C5-6 and C6-7 effacing the thecal sac; possible foraminal narrowing at C5-6; and a minor disc protrusion at C7-T1 (Tr. 786-787).

## IV. SUMMARY OF TESTIMONY

Plaintiff testified that she lived alone and received unemployment benefits and a small pension (Tr. 101). She acknowledged that the receipt of unemployment benefits depended on her seeking work, and she said she had been looking for a job (Tr. 102). However, she stated that she could not perform full-time work (Tr. 115). Plaintiff testified that her last paid position was looking after her mother (Tr. 102-103). She stated that she drove and completed more than one year of college (Tr. 104). Plaintiff testified that she most recently worked as an agent for the lottery, selling services to retail establishments over the telephone (Tr. 107-108).

Plaintiff testified that she could not stand for over forty-five to sixty minutes, had problems with her knees, and experiencing difficulty sleeping due to CTS symptoms (Tr. 110). She also said she was legally blind in one eye, was diagnosed with fibromyalgia, and could lift up to twenty pounds (Tr. 110-111, 114).

7

Thereafter, the vocational expert (VE) testified that she understood that if she was to give any answer that conflicted with the information in the Dictionary of Occupational Titles or the Selected Characteristics of Occupations, that she would advise the ALJ of that and explain the basis for her opinion (Tr. 124).

After the hearing, the ALJ sent the vocational expert (VE) an interrogatory, seeking information regarding what work could be performed by a person with Plaintiff's vocational profile who could: lift up to ten pounds occasionally; stand and walk for two hours per workday; sit for six hours per workday, with the option to alternate between sitting and standing at will; occasionally push and pull with her legs; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and frequently reach, handle, finger, and feel (Tr. 353-354). The ALJ indicated that the person had limited depth perception and field of vision; should avoid concentrated exposure to extreme cold or vibration; and should avoid moderate exposure to motor vehicles, hazardous heights, and hazardous machinery (Tr. 354). The ALJ stated that the person could perform a variety of routine tasks that did not require rapid or consistent pace, and could engage appropriately in simple social interactions (Tr. 354).

The VE stated that such a person could perform Plaintiff's past work as a telephone solicitor (Tr. 354). The VE noted that, although the job required interacting with others, the worker typically used a script (Tr. 354). In response to a question on the form, the VE indicated that there were no conflicts between the occupational evidence she provided and the occupational information in the Dictionary of Occupational Titles and the Selected Characteristics of Occupations (Tr. 356). The VE testified that Plaintiff's past relevant work included work as an insurance sale agent (skilled and light), a door-to-door salesperson (unskilled and light), telephone solicitor (sedentary and semi-skilled), and home health aide (medium per the DOT, performed at light, semi-skilled) (Tr. 124-125).

8

In the interrogatory subsequent to the hearing, the VE responded that there were no transferable skills from the telephone solicitor position (Tr. 355). She further stated that there were **no conflicts** between her occupational evidence report and the DOT (Tr. 356).

## V.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance and supplemental security income benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work

experience and residual functional capacity.  *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards.  *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997).  Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII. **ANALYSIS**

Plaintiff asserts two assignments of error:

    A.    THE ADMINISTRATIVE LAW JUDGE FAILED TO FULFILL HER DUTY TO RESOLVE CONFLICTS BETWEEN THE DICTIONARY OF OCCUPATIONAL TITLES AND THE VOCATIONAL

10

        EXPERT'S TESTIMONY.

    B.    THE ADMINISTRATIVE LAW JUDGE'S RESIDUAL FUNCTIONAL CAPACITY, IN RELIANCE UPON THE OPINIONS OF THE NON-TREATING, NON-EXAMINING STATE AGENCY PHYSICIANS, IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

In determining Plaintiff's residual functional capacity, the ALJ considered the medical source opinions and discussed what weight she gave each one (Tr. 83). *See* 20 C.F.R. Sections 404.1545(a)(1), 416.945(a)(1).

Plaintiff argues that the ALJ erred in discounting Dr. Bedrick's opinion and assigning great weight to Dr. Shah's opinion (Pl.'s Brief at 12-14). Medical opinions from treating sources, such as Drs. Bedrick and Shah, may be given significant, or even controlling, weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. 20 C.F.R. Sections 404.1527(c)(2), 416.927(c)(2); *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994).

Based upon substantial evidence, the ALJ correctly discounted Dr. Bedrick's opinion (Tr. 83). Furthermore, the ALJ stated that Dr. Bedrick's opinion should be given minimal weight (Tr. 83). The ALJ discounted the opinion because Dr. Bedrick was vague in describing Plaintiff's ability to lift and carry objects (Tr. 83). The ALJ also based her finding on the fact that Dr. Bedrick's opinion concerning Plaintiff's ability to walk, sit, and stand conflicted with Dr. Shah's opinion (Tr. 83). Hence, substantial evidence supports the ALJ's assessment of the treating medical source opinions. In this case, the ALJ correctly determined that Dr. Bedrick's opinion had minimal value because it was not specific with respect to Plaintiff's ability to lift and carry (Tr. 83). Dr. Bedrick was asked how many pounds Plaintiff could lift occasionally, and she responded, "light lifting only" (Tr. 753). When asked how much Plaintiff could lift frequently, she answered, "2x daily" (Tr. 753). Dr. Bedrick's

11

opinion was not specific enough with respect to Plaintiff's functioning.

Also, the ALJ correctly relied upon Dr. Shah's opinion rather than Dr. Bedrick's contradictory assessment (Tr. 83). Since Dr. Shah was an orthopedic specialist, and much of Plaintiff's difficulties related to orthopedic issues, it was proper for the ALJ to give more weight to the opinion of Dr. Shah, an orthopedic specialist, than to Dr. Bedrick, who was a family physician (Tr. 83). 20 C.F.R. Sections 404.1527(c)(5), 416.927(c)(5). As a matter of fact, Dr. Shah treated Plaintiff extensively for her primary complaint of knee osteoarthritis.

Next, Plaintiff contends that the ALJ should have given more weight to Dr. Bedrick's opinion because her opinion addressed Plaintiff's CTS, fibromyalgia, and cervical degenerative disc disease, whereas Dr. Shah only treated her for knee osteoarthritis (Pl.'s Brief at 13-14). Although Dr. Bedrick mentioned in her opinion that Plaintiff had pain in her hands, knees, and wrist, she did not mention CTS, fibromyalgia, or cervical degenerative disc disease (Tr. 753-754). In addition, there was no evidence before the ALJ indicating that Dr. Bedrick treated Plaintiff for cervical degenerative disc disease. The medical records before the ALJ documented fibromyalgia, which Plaintiff's rheumatologist described as benign, non-progressive, and not a serious condition (Tr. 448-449). There is no indication Dr. Bedrick provided treatment for that condition. Thus, the undersigned concludes that the Plaintiff has not shown that the ALJ erred in giving more weight to Dr. Shah's opinion than Dr. Bedrick's.

Plaintiff also argues that the ALJ erred in relying on the opinions of the medical sources that reviewed the medical evidence for the state DDS (Pl.'s Brief at 14). She contends that those opinions were unreliable because they did not review the most recent medical evidence (Pl.'s Brief at 14). However, the most recent medical evidence adds nothing new. The ALJ only gave partial weight to Dr. Bacalla's opinion, and found much greater limitations than Dr. Bacalla described (Tr. 83, 418-

424). The ALJ discussed another opinion from a state DDS doctor that addressed her visual limitations (Tr. 83, 425-426, 521). Nevertheless, Plaintiff does not dispute any of the ALJ's findings regarding her vision. Hence, substantial evidence supports the ALJ's assessment of the medical source opinions.

Next, Plaintiff argues that the ALJ erred in relying on the VE's opinion because the ALJ did not follow the requirements of Social Security Ruling 00-4p (Pl.'s Brief at 9-11). Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000), requires an ALJ to ask the VE whether the opinion she provides conflicts with the Dictionary of Occupational Titles (DOT). If the VE's opinion appears to conflict with the DOT, the ALJ must obtain a reasonable explanation for the apparent conflict. *Id.* However, the ALJ complied with the Ruling because, in response to an interrogatory question, the VE indicated that there were no conflicts between the occupational evidence she provided and the occupational information in the DOT (Tr. 356).

The undersigned finds that the ALJ satisfied the requirement in Social Security Ruling 00-4p in inquiring whether the VE's opinion conflicted with the information in the DOT (Tr. 356). Hence, the ALJ was entitled to rely on the VE's opinion that a person with Plaintiff's RFC could work as a telephone solicitor.

Even if the ALJ would not have asked the VE whether her opinion conflicted with the DOT, Plaintiff does not identify any actual problem. Plaintiff challenges the conclusion that she could work as a telephone solicitor given the limitation in the ALJ's RFC finding to only simple social interactions (Pl.'s Brief at 9-10). She notes that the SCO indicates that the position requires frequent talking (Pl.'s Brief at 10). However, this is not a problem, since the ALJ limited the *complexity* of Plaintiff's interactions.

Plaintiff also challenges the VE's testimony because the DOT indicates that a telephone solicitor must be able to persuade, speak, signal, serve, and take instruction (Pl.'s Brief at 10). However, this does not conflict with the VE's testimony. In fact, the VE stated that, in her opinion,

13

a person limited to simple social interactions could perform the job. The VE stated that a person with Plaintiff's limitations could work as a telephone solicitor because the position typically involved working from a script (Tr. 354). Working from a script reduces the complexity of social interaction.

Finally, Plaintiff argues that the ALJ erred in relying on the VE's opinion because the RFC indicated that Plaintiff must be permitted to sit or stand at will, and the VE indicated that a person could not work as a telephone solicitor if she required more than a brief period of standing (Pl.'s Brief at 11, Tr. 129). Plaintiff is contending that the VE did not address this portion of the hypothetical question (Pl.'s Brief at 11). However, in the interrogatory, the ALJ asked the VE to consider a person that required the option to alternate between sitting and standing at will (Tr. 354). The VE opined that such limitations, in addition to other limitations, were still compatible with work as a telephone solicitor (Tr. 353-354).

## IX. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform as a telephone solicitor, and, therefore, was not disabled. Hence, she is not entitled to DIB and SSI.

Dated: March 16, 2015              */s/George J. Limbert*
                                    GEORGE J. LIMBERT
                                    UNITED STATES MAGISTRATE JUDGE